AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the

Northern District of California

| | |
|---|---|
| United States of America<br>v.<br>Melvin Diaz<br><br>*Defendant(s)* | Case No. 3:22-mj-71287 MAG |

FILED
Oct 06 2022
Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of  September 20, 2022  in the county of  San Francisco  in the  Northern  District of  California  , the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. § 841(a)(1) and 841(b)(1)(B)(viii) | Distribution and possession with intent to distribute methamphetamine |

This criminal complaint is based on these facts:

Please see the attached affidavit of DEA TFO Michael Cunnie

☑ Continued on the attached sheet.

Approved as to form /s/ Nicholas M. Parker
   AUSA Nicholas M. Parker

/s/ Michael Cunnie
*Complainant's signature*

DEA TFO Michael Cunnie
*Printed name and title*

Sworn to before me by telephone.

Date: 10/06/2022

*Judge's signature*

City and state:  San Francisco, California    Hon. Thomas S. Hixson, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT AND ARREST WARRANT

I, Michael Cunnie, a Task Force Officer of the Drug Enforcement Administration, being duly sworn, hereby declare as follows:

### INTRODUCTION

1. I make this Affidavit in support of an application under Rule 4 of the Federal Rules of Criminal Procedure for a criminal complaint and arrest warrant charging MELVIN DIAZ (DOB: 10/28/1995), AKA Melvin DIAZ-Arteaga, AKA Melvin Alexis Centeno-Fuentes, with one count of distribution and possession with intent to distribute 50 grams or more of a mixture and substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers, in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(B)(viii), on or about September 20, 2022 in the Northern District of California.

### SOURCES OF INFORMATION

2. Because this Affidavit is submitted for the limited purpose of securing a criminal complaint and arrest warrant, I have not included every fact known to me concerning this investigation. Instead, I have set forth only the facts necessary to establish probable cause that the violations of federal law identified above have occurred.

3. I have based my statements in this Affidavit on my training and experience, personal knowledge of the facts and circumstances obtained through my participation in this investigation, information provided by other agents and law enforcement officers, and information provided by records and databases. I believe these sources to be reliable. Where I refer to conversations and events, I refer to them in substance and in relevant part rather than in their entirety or verbatim, unless otherwise noted. This Affidavit also reflects my current understanding of facts relating to this investigation, but my understanding may change in the future as the investigation proceeds.

### AFFIANT BACKGROUND

4. I am an "investigator or law enforcement officer of the United States" within the meaning of 18 U.S.C. § 2510(7)—that is, an officer of the United States who is empowered by

law to conduct investigations of, and to make arrests for, the narcotics offenses enumerated in Title 21 of the United States Code.

5. I am employed by the San Francisco Police Department (SFPD) as a police officer and have been so employed since January 2, 2015. I am currently assigned as a case-specific Task Force Officer (TFO) to the Drug Enforcement Administration (DEA) within the San Francisco Divisional Office. I have been assigned as a case-specific DEA TFO since February 2022.

6. I graduated from the SFPD academy in January 2015. In the police academy, I received 40 hours of narcotics-related training. I also attended the SFPD detective school where I received additional narcotics investigations training. The training curriculum covered all aspects of drug investigations, including identification of controlled substances, physical surveillance, utilization of confidential sources, interview techniques, undercover operations and the general operation of drug trafficking organizations.

7. During the course of my employment as a police officer, I have participated in many controlled substance investigations either as a case agent or in a supporting role. I have debriefed confidential sources, and witnesses who had personal knowledge regarding drug trafficking organizations. In addition, I have discussed with numerous law enforcement officers and confidential sources the methods and practices used by drug traffickers. I have also participated in many aspects of drug investigations including, but not limited to, undercover operations, telephone toll analysis, records research, and physical surveillance. I have also assisted in court-ordered wiretap investigations and in the execution of numerous federal and state search and arrest warrants related to illegal activities involving controlled substances that resulted in the arrest of suspects and seizure of controlled substances.

8. I have monitored, conducted surveillance, or otherwise participated in multiple investigations that utilized wire interceptions. I have also participated in writing, editing, and reviewing federal affidavits made in support of electronic interceptions.

9. Through my training, education, experience, and my conversations with other

agents and officers who conduct drug investigations, I have become familiar with drug traffickers' use of mobile telephones, and their use of numerical codes and code words to conduct their business. By virtue of my training and experience, and through my conversations with other agents and officers who conduct drug investigations, I have become familiar with drug traffickers' methods of operation, including, but not limited to, the import, manufacturing, distribution, storage, safeguarding, and transportation of controlled substances, and the methods used by drug traffickers to collect, transport, safeguard, remit, and/or launder drug proceeds.

10. I have participated in the investigation discussed in this Affidavit. I have also discussed the investigation with special agents of the DEA and with other law enforcement agencies involved in the investigation. I have reviewed records and reports relating to the investigation. Unless otherwise noted, wherever in this Affidavit I assert that a statement was made, the information was provided by another DEA special agent, law enforcement officer, or witness who may have had either direct or hearsay knowledge of that statement and to whom I or others have spoken, or whose reports I have read and reviewed.

## APPLICABLE LAW

11. Title 21, United States Code, Section 841(a)(1) and (b)(1)(B)(viii) prohibit any person from knowingly or intentionally distributing or possessing with intent to distribute 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers. Methamphetamine is a Schedule II substance under the Controlled Substances Act.

12. The elements of a violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(viii) are as follows: (i) the defendant knowingly distributed—or possessed with intent to distribute—50 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers; and (ii) the defendant knew that the substance he distributed or possessed with intent to distribute was methamphetamine or some other federally controlled substance. "Distributing" means delivering or transferring possession of methamphetamine to another person, with or without any financial interest in that transaction.

3

## FACTS ESTABLISHING PROBALE CAUSE

### A. DIAZ Sells Approximately One Ounce of Fentanyl to an Undercover SFPD Officer on September 16, 2022[1]

13. On the night of September 16, 2022, officers assigned to the SFPD's Narcotics Division observed individuals engaged in illegal narcotics transactions on Hyde Street between Ellis Street and Eddy Street in the Tenderloin neighborhood of San Francisco. Based on recent arrests and investigations, as well as multiple citizen complaints, officers assigned to this investigation knew this area to be one where narcotics are frequently bought and sold at all hours of the day. One of the individuals the officers observed engaging in illegal narcotics transactions was DIAZ, a known narcotics trafficker, who was loitering on the east sidewalk of Hyde Street.

14. Later that evening, an SFPD officer assigned to the Narcotics Division was working in an undercover capacity (UC) to purchase narcotics from DIAZ. Another SFPD officer was working as the UC's close-cover surveillance/protection officer. Additional SFPD officers were also in the area assisting in this investigation.

15. The UC drove an undercover vehicle southbound on Hyde Street, a one-way street that runs southbound, from Ellis Street toward Eddy Street. The UC then double-parked the undercover vehicle mid-block in the eastern most lane of traffic. The UC double-parked the vehicle next to where DIAZ was loitering amongst a crowd of people. DIAZ looked at the UC as the UC was sitting in the driver's seat of the undercover vehicle and nodded his head at the UC. The UC nodded back and opened the vehicle's driver-side door. DIAZ walked closer to the UC's vehicle and asked what the UC needed. The UC told DIAZ that he was looking for fentanyl and needed a whole ounce. DIAZ asked the UC how much money the UC had. The UC told DIAZ he could spend up to $500. DIAZ pointed to an empty parking space on the west side of the street and told the UC to park there. The UC moved the vehicle and parked in the parking space on the

---

[1] Although this Affidavit is made in support of Complaint that would charge DIAZ with one count of distributing or possessing with intent to distribute methamphetamine on September 20, 2022, it also describes two other narcotics transactions that DIAZ engaged in or coordinated with an undercover SDPD officer.

4

west side of Hyde Street.

16. The UC watched DIAZ approach a man standing on the east sidewalk of Hyde Street and retrieve an object from inside the man's backpack. DIAZ then walked to the passenger side of the UC's vehicle. The UC rolled down the window and DIAZ leaned into the open window. The UC handed DIAZ $500 in city-owned funds. DIAZ then handed the UC a clear plastic sandwich bag that contained several pieces of compressed white powder that the UC believed to be fentanyl.

17. DIAZ told the UC to take down his phone number if the UC wanted more fentanyl. Using an SFPD-issued cellphone, the UC sent a text message to the number DIAZ provided. DIAZ told the UC his name was "Alex." DIAZ then took out his phone and showed the UC he had received the text the UC had sent. The UC told DIAZ that he was from Santa Rosa and that he comes down to San Francisco to buy fentanyl and methamphetamine every one or two weeks. DIAZ told the UC he had everything. The UC asked DIAZ if DIAZ could supply "Oxys." DIAZ responded saying "Yeah, M30s." (I know, based on my training and experience, that OxyContin pills have "M 30" imprinted on them.) The UC asked DIAZ how much he would charge for OxyContin. DIAZ said he could sell them for $15.00 per pill. DIAZ then told the UC to make sure to text him soon because he changes his phone number often and he will make sure to send the UC his new phone number.

18. Following this interaction and narcotics transaction with DIAZ, the UC left the area.

19. SFPD officers subsequently weighed the suspected fentanyl (28.3 grams gross) and conducted a presumptive test using an SFPD-issued TruNarc Analyzer. The test showed the substance contained mannitol. Based on my training and experience, I know that mannitol is often used to "cut" fentanyl and that suspected fentanyl will often test in the field for mannitol. Per SFPD policy, the suspected fentanyl was sent to the Alameda County Sheriff's Office Crime Lab for further testing, where Criminalist Michelle Hensley utilized chemical tests and Gas Chromatography Mass Spectrometry to determine that the substance DIAZ sold to the UC

contained fentanyl, as well as 4-ANPP, a fentanyl analog and a controlled substance.

B. **COUNT ONE: DIAZ Sells Approximately 86.6 Grams of Methamphetamine to the UC on September 20, 2022**

20. On September 20, 2022, the UC texted DIAZ and arranged to purchase three ounces of methamphetamine for $700. DIAZ instructed the UC to meet him at 700 Geary Street and stated "….its calmer with the police there." The UC drove an undercover vehicle to the area of 700 Geary Street and double-parked. At around 8:35 p.m., DIAZ approached the passenger-side window of the vehicle. Through the rolled-down window, the UC handed DIAZ $700 in city-owned funds. DIAZ handed the UC three clear plastic bags that each contained a substance the UC suspected to be methamphetamine. The UC told DIAZ he still had some of the fentanyl but would contact DIAZ soon to get more. DIAZ said, "It's good." DIAZ then walked away from the UC's vehicle toward Hyde Street. The UC drove away from the area. The interaction between the UC and DIAZ was captured on video.

21. SFPD officers subsequently weighed the suspected methamphetamine (86.6 grams gross) and conducted a presumptive test using an SFPD-issued TruNarc Analyzer. The substance tested presumptive positive for methamphetamine.

C. **DIAZ Coordinates the Sale of Approximately 57 Grams of Fentanyl to the UC on September 24, 2022**

22. On September 24, 2022, at around noon, the UC texted DIAZ to purchase narcotics. DIAZ responded by text saying, "Im work in the night time bro," and "Can you wait to the night?" The UC conveyed to DIAZ that he needed two ounces of fentanyl urgently and that he could meet DIAZ anywhere. DIAZ instructed the UC to meet him at 2357 109th Avenue in Oakland, California.

23. The UC drove an undercover vehicle to the area of 2357 109th Avenue in Oakland and double-parked. The UC texted DIAZ to say he had arrived at the meeting location. DIAZ texted the UC to say his cousin "Cristian" was coming to meet the UC. DIAZ said "Cristian" would be riding a bicycle. The UC and DIAZ then confirmed through text that the

price for two ounces of fentanyl would be $1,000.

24. At around 2:05 p.m., an unknown man riding a bicycle approached the driver-side window of the UC's vehicle. The UC asked the unknown man if he was "Cristian." The man said "Yeah." The man then handed the UC two clear plastic bags, each containing a compressed white powder the UC suspected to be fentanyl. The UC then handed "Cristian" $1,000 in city-owned funds. "Cristian" then rode his bicycle away from the area and the UC drove away from the area. The interaction between the UC and "Cristian" was captured on video.

25. SFPD officers subsequently weighed the suspected fentanyl (57 grams gross) and conducted a presumptive test using an SFPD-issued TruNarc Analyzer. The test showed the substance contained mannitol. Based on my training and experience, I know that mannitol is often used to "cut" fentanyl and that suspected fentanyl will often test for mannitol in the field. Per SFPD policy, the suspected fentanyl was sent to the Alameda County Sheriff's Office Crime Lab for further testing. As of the date of this Affidavit, complete lab results are still pending.

## SEALING REQUEST

26. Based on my training and experience, the disclosure of the existence of this Affidavit, the Complaint, arrest warrant, and/or all related documents may cause other co-conspirators, known and unknown at this time, to destroy evidence or to conceal ongoing criminal activity, jeopardizing the progress of this ongoing investigation. The disclosure of these documents may also jeopardize the safety of DIAZ and/or cause him to flee from prosecution. I therefore request that the Court seal this Affidavit, the Complaint, the summons and arrest warrant, and all related documents.

## CONCLUSION

27. On the basis of my training and experience, my participation in this investigation, and the information summarized above, there is probable cause to believe that on or about September 20, 2022, in the Northern District of California, Melvin DIAZ distributed or possessed with intent to distribute 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers, in violation of

21 U.S.C. § 841(a)(1) and (b)(1)(B)(viii).

                                                   */s/ Michael Cunnie*
                                                   MICHAEL CUNNIE
                                                   Task Force Officer
                                                   Drug Enforcement Administration

Sworn to before me over the telephone and signed by me pursuant to Fed. R. Crim. P. 4.1 and 4(d) on this __6th__ day of October 2022.

HON. THOMAS S. HIXSON
United States Magistrate Judge

8

# DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

**BY:** [X] COMPLAINT   [ ] INFORMATION   [ ] INDICTMENT   [ ] SUPERSEDING

**Name of District Court, and/or Judge/Magistrate Location**
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

## OFFENSE CHARGED

21 U.S.C. § 841(a)(1) & (b)(1)(B)(viii) - Distribution and possession with intent to distribute methamphetamine (B weight)

[ ] Petty
[ ] Minor
[ ] Misdemeanor
[X] Felony

**PENALTY:**
- Imprisonment: 5 – 40 years (21 U.S.C. § 841(b)(1)(B))
- Fine: $5 million (21 U.S.C. § 841(b)(1)(B))
- Supervised Release: 4 years – life (21 U.S.C. § 841(b)(1)(B))
- Special Assessment: $100 (18 U.S.C. § 3013(a)(2)(A))
- Forfeiture  21 U.S.C. § 853(a)

## DEFENDANT - U.S

▶ Melvin Diaz

**DISTRICT COURT NUMBER**

## PROCEEDING

**Name of Complaintant Agency, or Person (& Title, if any)**
DEA TFO Michael Cunnie

[ ] person is awaiting trial in another Federal or State Court, give name of court

[ ] this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40.  Show District

[ ] this is a reprosecution of charges previously dismissed which were dismissed on motion of:
    [ ] U.S. ATTORNEY   [ ] DEFENSE

**SHOW DOCKET NO.**

[ ] this prosecution relates to a pending case involving this same defendant

[ ] prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

**MAGISTRATE CASE NO.**

**Name and Office of Person Furnishing Information on this form**   Stephanie M. Hinds

[X] U.S. Attorney   [ ] Other U.S. Agency

**Name of Assistant U.S. Attorney (if assigned)**   Nicholas M. Parker

## DEFENDANT

**IS *NOT* IN CUSTODY**
Has not been arrested, pending outcome this proceeding.
1) [X] If not detained give date any prior summons was served on above charges ▶
2) [ ] Is a Fugitive
3) [ ] Is on Bail or Release from (show District)

**IS IN CUSTODY**
4) [ ] On this charge
5) [ ] On another conviction     [ ] Federal   [ ] State
6) [ ] Awaiting trial on other charges
   If answer to (6) is "Yes", show name of institution

Has detainer been filed?  [ ] Yes   [ ] No
If "Yes" give date filed

**DATE OF ARREST** ▶ Month/Day/Year

Or... if Arresting Agency & Warrant were not

**DATE TRANSFERRED TO U.S. CUSTODY** ▶ Month/Day/Year

[ ] This report amends AO 257 previously submitted

## ADDITIONAL INFORMATION OR COMMENTS

**PROCESS:**
[ ] SUMMONS   [ ] NO PROCESS*   [X] WARRANT     **Bail Amount:** No bail

If Summons, complete following:
[ ] Arraignment   [ ] Initial Appearance

**Defendant Address:**

* Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Date/Time:              Before Judge:

Comments: